**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**ANTOINE HILAIRE,** **- CV - ( ) ( )**

**Plaintiff,** **<u>COMPLAINT</u>**

**-against-**

**STEINWAY & SONS,** **JURY TRIAL DEMANDED**

**Defendant.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## INTRODUCTION

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981 and 2000e *et seq*., the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), for declaratory and injunctive relief and to recover damages for lost pay, benefits, and mental anguish suffered by Plaintiff ANTOINE HILAIRE (hereinafter "Plaintiff" or "Hilaire"), against Defendant STEINWAY & SON, ("Defendant" or "Steinway"), for the Defendant's continued pattern and practice of unlawful employment retaliation, discrimination, including disparate treatment, and hostile work environment based upon Plaintiff's race, color, national origin, and retaliation from at least 2014 to present, which is detailed in Plaintiff's Charge of Discrimination filed on December 7, 2021, with the Equal Employment Opportunity Commission (hereinafter "EEOC"), and hereinafter.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 451, § 1331, and § 1343. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, and pursuant to Section 102 of the Civil Rights Act of 1991, and 42 U.S.C. § 1981, all of which involve questions of Federal Law.

2. Jurisdiction regarding Plaintiff's state and city law claims is conferred upon this Court by and under the principles of supplemental jurisdiction. 28 U.S.C.A. § 1367.

3. Venue in this Court is proper because the employment practices hereafter alleged to have been unlawful were committed in the Eastern District of New York, and pursuant to 28 U.S.C.A. § 1391(b)(c), because Defendant resides in this District.

**PARTIES**

4. Plaintiff is a racially black male citizen of the United States, whose national origin is Haitian and speaks with a heavy Haitian accent, and is over age 18, residing in Queens County, New York.

5. Plaintiff, at all times relevant, was, and is an employee of Defendant who started his employment with Defendant in or about 1990, as detailed further hereinafter.

6. Plaintiff at all times relevant to this action is a person and/or employee and/or on who enjoys the protections under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981 and 2000e *et seq*., New York State Human Rights Law §§ 292 and 296, and the New York City Administrative Code Title 8, *et seq*., against Defendant's conduct alleged herein.

7. Defendant manufactures and sells pianos worldwide and had more than 100 employees that worked at least twenty calendar weeks in 2014 through 2021, and currently.

8. Defendant has offices and its principal place of business at which has offices at One Steinway Place, Astoria, NY 11105, located in the County of Queens.

**ADMINISTRATIVE PROCEDURES**

9. On December 7, 2021, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), based on a continuing pattern and practice of discrimination based on race, color, national origin, and retaliation, and commenced

this action within ninety (90) days of the receipt of the Notice of Right to Sue, which is dated February 24, 2023.

## STATEMENT OF CLAIMS

10. Since at least in or about 2014, Defendant engaged in a continuing pattern and practice of unlawful employment discrimination and retaliation in violation of Federal, State and City Law, including but not limited to disparate treatment, hostile work environment, decreased pay, pretexual disciplinary actions, derogatory remarks from supervisors and co-workers based upon Plaintiff's black race and skin color, and Haitian national origin, as detailed herein.

## FACTS

11. In 1990, Plaintiff started working for the Defendant as a sander in the Coating Department, which is where the pianos are prepared for coating and are coated.

12. In or about 1999, Plaintiff was trained for and promoted to the skilled position of soundboard technician in the "Belly Department."

13. The Belly Department is where the "belly" shaped portion of a grand and/or baby grand piano, which contains the piano strings and soundboard, is manufactured.

14. In 1999, when Plaintiff began working in the Belly Department in the skilled position of soundboard technician, his foreman was Lou Begoni.

15. In or about 2006 or 2007, Defendant's employee Henry Hoose replaced Mr. Begoni as foreman in the Belly Department, and Mr. Hoose became Plaintiff's foreman.

16. Mr. Hoose was at all times relevant a white male whose national origin is the United States of America.

17. After Mr. Hoose became Plaintiff's foreman, Mr. Hoose treated Plaintiff in disparate and discriminatory manner as compared to his co-workers, including making derogatory

comments to Plaintiff based on Plaintiff's race and national origin, such as "I don't like Haitians" and "you don't know how to speak English," although Plaintiff did speak English, with a heavy Haitian accent.

18. Mr. Hoose also verbally berated and yelled at Plaintiff under the guise of pretexual work related issues on a regular and continuing basis at least several times a week until Plaintiff was terminated in or about May 2014.

19. Mr. Hoose treated Plaintiff in the aforesaid discriminatory manner based on Plaintiff's race, skin color, and Haitian national origin.

20. During the time of Mr. Hoose's aforesaid discriminatory harassment of Plaintiff, the Plaintiff complained to the supervisor of the Belly Department, Mike Mohr, a white male who was not of Haitian national origin, who witnessed Mr. Hoose's discriminatory harassment against Plaintiff but took no action to address or remediate the problem. Instead, Mr. Mohr condoned, participated and/or acquiesced and was complicit in the pattern and practice of disparate treatment, discrimination, and harassment perpetrated against Plaintiff by Mr. Hoose, which created a hostile work environment.

21. Mr. Mohr also engaged in disparate and discriminatory conduct against Plaintiff based on his race, skin color, and Haitian national origin by creating pretextual workplace disciplinary issues and disparate treatment against Plaintiff and then saying to Plaintiff, in a sarcastic and condescending manner, that he, Mr. Mohr, engages in charitable help to Haitians suffering in Haiti, thereby suggesting that his disparate and discriminatory treatment of Plaintiff was not due to his race, skin, color and/or Haitian national origin.

22. In or about May 2014, Defendant terminated Plaintiff after Plaintiff suffered several years of the continuing pattern and practice of disparate treatment, hostile work environment, and

discrimination against him by Messrs. Hoose and Mohr, including Plaintiff's unaddressed complaints to Mr. Mohr about this discrimination.

23. On May 30, 2014, Plaintiff filed a verified complaint with the New York State Division of Human Rights ("Division") charging the Defendant with an unlawful discriminatory practice relating to employment and based upon his national origin, race/color in violation of N.Y. Exec. Law, Art. 15 ("Human Rights Law"), under case number 10169112, which was cross-filed with Equal Employment Opportunity Commission ("EEOC") under Federal Charge No. 16GB403187 ("2014 Complaint").

24. On or about November 13, 2014, Plaintiff withdrew the 2014 Complaint because he reached a private settlement with Defendant that included re-employment, back pay, and an agreed upon pay rate when reinstated.

25. In or about November 2014, Plaintiff returned and was reinstated as an employee of the Defendant; however, the disparate treatment, hostile work environment, discrimination, and harassment continued.

26. Upon Plaintiff's reinstatement in or about November 2014, the Defendant retaliated against Plaintiff for filing the 2014 Complaint, and refused to pay Plaintiff the agreed upon pay rate, which continues to this day.

27. Upon Plaintiff's reinstatement in or about November 2014, he was transferred to the lesser position of a sander in the Case Department where portions of the pianos manufactured by Defendant are prepared for the applications of finishing coatings, including sanding work.

28. In the Case Department, Plaintiff's foreman was named Lorenzo, who Plaintiff believes is of Dominican national origin, and Plaintiff's supervisor was John Mary, a white male whose nationality is the United States of America.

29. From November 2014 to in or about October 2017, while Plaintiff worked in the Case Department, Lorenzo would routinely make derogatory remarks regarding Plaintiff's Haitian national origin, often calling me a "Fu*#%^g Haitian." Lorenzo would also berate Plaintiff and create pretextual disciplinary issues as part of his pattern and practice of retaliation, disparate treatment, and discriminatory harassment against Plaintiff, which created a hostile work environment.

30. Plaintiff complained to his supervisor John Mary who witnessed Lorenzo's disparate, discriminatory, retaliatory, and harassing conduct against Plaintiff. However, Mr. Mary took no action to stop Lorenzo's pattern and practice of retaliation, disparate treatment, discrimination, and harassment against Plaintiff. Instead, Mr. Mary condoned, acquiesced, and was complicit in Mr. Lorenzo's pattern and practice of discrimination, retaliation, and harassment against Plaintiff.

31. In or about October 2017, in addition to the continued derogatory remarks regarding Plaintiff's race, color, and national origin, Defendant discriminated and retaliated against Plaintiff by assigning a non-black and non-Haitian employee, with less experience and less seniority, to replace the employee who had filled to Plaintiff's former position as a soundboard technician in 2014, which Plaintiff held when he was illegally terminated in 2014. The Defendant passed over Plaintiff for the position of soundboard technician even though Plaintiff was qualified as a soundboard technician, a position he held for approximately fifteen (15) years before Plaintiff was illegally terminated in 2014; and Plaintiff had been requesting re-assignment to the position of sound board technician since being reinstated to work in November 2014, after withdrawing his 2014 Complaint, just months after the Defendant illegally terminated him earlier in 2014.

32. In or about October 2017, in addition to passing over Plaintiff for the soundboard technician's position as detailed above, Defendant further retaliated and discriminated against Plaintiff by transferring him to a lesser position in another department, the Material and/or Stores Department, which handles inventory control of the parts used to manufacture the pianos, where Plaintiff continues to work to the present date.

33. During Plaintiff's time working in the Stores Department, his foreman has been Andrew Howell, a black male whose national origin Plaintiff believes is Barbadian, and one of his supervisor's has been Adam Rosen, a white male who is not black or Haitian. Plaintiff has also had two co-workers in Stores Department; Jack Hart, a black male whose national origin is the United States of America, and Leon (last name unknown), whose national origin, Plaintiff believes is Guyanese.

34. During Plaintiff's time working in the Stores Department, Mr. Howell and Leon routinely made derogatory and discriminatory comments based upon Plaintiff's Haitian national origin, including telling Plaintiff to "go back to Haiti" and berated him because of his Haitian accent, and routinely created pretextual disciplinary and/or work issues as a basis to harass Plaintiff resulting in disparate treatment and a hostile work environment for Plaintiff. Mr. Rosen witnessed this discriminatory and harassing conduct against Plaintiff. However, Mr. Rosen took no action to stop the pattern and practice of retaliation, disparate treatment, discrimination, and harassment against Plaintiff. Instead, Mr. Rosen condoned, acquiesced, and was complicit in the pattern and practice of disparate treatment, retaliation, discrimination, and harassment against Plaintiff, which created a hostile work environment for Plaintiff.

35. In or about October 2020, in addition to the continued disparate treatment, retaliation, derogatory and discriminatory remarks based upon Plaintiff's national origin detailed

above, the Defendant discriminated and retaliated against Plaintiff by failing to assign him overtime based upon his race/color and/or national origin ("Overtime Dispute"), and his prior and continued complaints about discrimination and retaliation.

36. In or about October 24, 2020, Plaintiff's union filed a grievance on Plaintiff's behalf against the Defendant regarding the Overtime Dispute since overtime assignment is subject to the terms of the collective bargaining agreement between Plaintiff's union and the Defendant ("CBA").

37. The Overtime Dispute became the subject of an arbitration ("Overtime Arbitration").

38. On or about April 6, 2021, and 19, 2021, the Overtime Arbitration was conducted, and the Arbitrator reserved decision.

39. On or about May 18, 2021, in addition to the continued disparate treatment, retaliation, derogatory and discriminatory remarks based upon Plaintiff's national origin, Defendant continued its pattern and practice of discrimination and retaliation against Plaintiff by issuing a pretextual "Performance Correction Notice" to him, which is not of the type issued to similarly situated co-workers under similar circumstances who are not black and/or of Haitian nationality.

40. On or about June 3, 2021, the Arbitrator issued an Award and Opinion regarding the Overtime Arbitration, which found that the Defendant violated the CBA by failing to assign overtime to Plaintiff on three different dates.

41. On or about October 28, 2021, in addition to the continued disparate treatment, retaliation, derogatory and discriminatory remarks based upon Plaintiff's national origin, Defendant continued its pattern and practice of discrimination and retaliation against Plaintiff by

issuing another pretextual "Performance Correction Notice" ("Notice") to him alleging two incidents which included false claims and information, which are not the type issued to Plaintiff's similarly situated co-workers under similar circumstances who are not black and/or of Haitian nationality.

42. On or about November 1, 2021, the Defendant withdrew one of the incidents contained in the pretextual Notice; however, one alleged incident and the Notice remain as a negative issue on Plaintiff's employment record.

43. The pattern and practice of disparate treatment, retaliation, discrimination and harassment against Plaintiff continues, including, his continued reduced pay, pretextual disciplinary actions, derogatory remarks based upon Plaintiff's race, color, and/or national origin by Mr. Howell, which are condoned by Mr. Rosen. The only thing that has changed is Leon no longer works in the Stores Department; however, his replacement, known to Plaintiff as "Z," who is not black or Haitian, makes derogatory remarks based upon Plaintiff's race, color, and/or national origin, which is condoned by Mr. Rosen.

44. The Defendant's continued pattern and practice of discrimination detailed above began in or about November 2014 and continues to this day, including but not limited to the reduction in Plaintiff's salary below the amount he was entitled to receive under his agreement with the Defendant, and in accordance with the salary terms of the Collective Bargaining Agreement between Plaintiff's union and Defendant to which Plaintiff was and is entitled.

45. Based upon the events described herein, the Defendant has subjected Plaintiff to a longstanding policy and continuing pattern and practice of disparate treatment, discriminatory treatment, harassment, retaliation, and a hostile work environment based upon Plaintiff's race, color, and/or national origin, and complaints regarding same in violation of Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981 and 2000e *et seq*., and New York State Human Rights Laws, and New York City laws. The continuing violations described above were known, permitted, and unaddressed by the Defendant for so long as to amount to a discriminatory policy or practice.

**AS AND FOR A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER**
**42 U.S.C.A. § 1981**

46. Plaintiff repeats, reiterates and realleges each and every allegation set forth above as if fully set forth at length herein.

47. Defendant's conduct alleged herein is in violation of 42 U.S.C.A. § 1981.

48. As a result of Defendant's unlawful discriminatory practices, Plaintiff has been damaged in an amount to be determined at trial, for his substantial losses including, but not limited to back pay, front pay, benefits, and emotional injury and mental anguish.

49. The aforementioned occurrences were caused by the wrongful, careless, reckless, and intentional acts of the Defendant.

50. As a result of Defendant's wrongful, careless, reckless, and intentional conduct, Plaintiff is entitled to punitive damages in an amount to be determined at trial.

**AS AND FOR A SECOND CAUSE OF ACTION FOR RETALIATION UNDER**
**42 U.S.C.A. § 1981**

51. Plaintiff repeats, reiterates and realleges each and every allegation set forth above as if fully set forth at length herein.

52. Defendant's conduct alleged herein is in violation of 42 U.S.C.A. § 1981 for retaliation.

53. As a result of Defendant's unlawful retaliatory practices, Plaintiff has been damaged in an amount to be determined at trial, for his substantial losses including, but not limited to back pay, front pay, benefits, and emotional injury and mental anguish.

54. The aforementioned occurrences were caused by the wrongful, careless, reckless, and intentional acts of the Defendant.

55. As a result of Defendant's wrongful, careless, reckless, and intentional conduct, Plaintiff is entitled to punitive damages in an amount to be determined at trial.

**AS AND FOR A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C.A. § 2000e**

56. Plaintiff repeats, reiterates and realleges each and every allegation set forth above as if fully set forth at length herein.

57. Defendant's conduct alleged herein is in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C.A. § 2000e.

58. As a result of Defendant's unlawful discriminatory practices, Plaintiff has been damaged in an amount to be determined at trial, for his substantial losses including, but not limited to back pay, front pay, benefits, and emotional injury and mental anguish.

59. The aforementioned occurrences were caused by the wrongful, careless, reckless, and intentional acts of the Defendant.

As a result of Defendant's wrongful, careless, reckless, and intentional conduct, Plaintiff is entitled to punitive damages in an amount to be determined at trial.

**AS AND FOR A FOURTH CAUSE OF ACTION FOR RETALIATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C.A. § 2000e**

60. Plaintiff repeats, reiterates and realleges each and every allegation set forth above as if fully set forth at length herein.

61. Defendant's conduct alleged herein is in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C.A. § 2000e for retaliation.

62. As a result of Defendant's unlawful retaliation practices, Plaintiff has been damaged in an amount to be determined at trial, for his substantial losses including, but not limited to back pay, front pay, benefits, and emotional injury and mental anguish.

63. The aforementioned occurrences were caused by the wrongful, careless, reckless, and intentional acts of the Defendant.

64. As a result of Defendant's wrongful, careless, reckless, and intentional conduct, Plaintiff is entitled to punitive damages in an amount to be determined at trial.

**AS AND FOR A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NYSHRL**

65. Plaintiff repeats, reiterates and realleges each and every allegation set forth above as if fully set forth at length herein.

66. Defendant engaged in unlawful discriminatory practices against the Plaintiff by the conduct alleged above regarding his employment, and/or excluding or otherwise denying equal jobs or benefits, and/or denying employment privileges or opportunities to him in violation of the NYSHRL §296.

67. As a result of Defendant's unlawful discriminatory practices, Plaintiff has been damaged in an amount to be determined at trial, for his substantial losses including, but not limited to back pay, front pay, benefits, and emotional injury and mental anguish.

**AS AND FOR A SIXTH CAUSE OF ACTION FOR RETALIATION UNDER THE NYSHRL**

68. Plaintiff repeats, reiterates and realleges each and every allegation set forth above as if fully set forth at length herein.

69. Defendant's conduct was done in retaliation for Plaintiff's complaints of discrimination alleged above in violation of the NYSHRL § 296.

70. Defendant engaged in unlawful discriminatory practices against the Plaintiff by retaliating against him and/or excluding or otherwise denying equal jobs or benefits, and/or denying employment privileges or opportunities to her in violation of the NYSHRL § 296.

71. As a result of Defendant's unlawful discriminatory practices, Plaintiff has been damaged in an amount to be determined at trial, for her substantial losses including, but not limited to back pay, front pay, benefits, and emotional injury and mental anguish.

**AS AND FOR A SEVENTH CAUSE OF ACTION EMPLOYMENT DISCRIMINATION UNDER THE NYCHRL**

72. Plaintiff repeats, reiterates and realleges each and every allegation set forth above as if fully set forth at length herein.

73. Plaintiff, at all times relevant to this Complaint, Plaintiff was protected against discrimination in employment under the New York City Human Rights Law ("NYCHRL").

74. Defendant engaged in unlawful discriminatory practices against the Plaintiff alleged above rearding Plaintiff's employment in violation of the NYCHRL § 8-107.

75. As a result of Defendant's unlawful discriminatory practices against the Plaintiff, he experienced a loss of past and future compensation and benefits, bonuses, deferred compensation and other employment benefits.

76. As a further result of Defendant's unlawful discriminatory practices, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation.

77. As a further result of Defendant's unlawful discriminatory practices, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, and anguish.

78. As a result of Defendant's unlawful discriminatory practices, Plaintiff has been damaged in an amount to be determined at trial, including, but not limited to pre-judgment interest, compensatory damages for, including, but not limited to lost wages, front pay and past and future benefits, mental anguish and emotional injury in an amount to be determined at trial for Defendant's violation of the NYCHRL.

**AS AND FOR EIGHTH CAUSE OF ACTION FOR RETALIATION UNDER THE NYCHRL**

79. Plaintiff repeats, reiterates and realleges each and every allegation set forth above as if fully set forth at length herein.

80. Plaintiff, at all times relevant to this Complaint, Plaintiff was protected against retaliation under the New York City Human Rights Law ("NYCHRL").

81. Defendant engaged in unlawful retaliatory practices against the Plaintiff alleged above regarding Plaintiff's employment in violation of the NYCHRL § 8-107.

82. As a result of Defendant's unlawful retaliatory practices against the Plaintiff, he experienced a loss of past and future compensation and benefits, bonuses, deferred compensation and other employment benefits.

83. As a further result of Defendant's unlawful retaliatory practices, Plaintiff has suffered and continues to suffer impairment and damage to Plaintiff's good name and reputation.

84. As a further result of Defendant's unlawful retaliatory practices, Plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation, and anguish.

85. As a result of Defendant's unlawful retaliatory practices, Plaintiff has been damaged in an amount to be determined at trial, including, but not limited to pre-judgment interest, compensatory damages for, including, but not limited to lost wages, front pay and past and future

benefits, mental anguish and emotional injury in an amount to be determined at trial for Defendant's violation of the NYCHRL.

**JURY DEMAND**

86. Plaintiff demands a trial by jury in this action.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff demands judgment against the Defendant and prays this Court:

A. Declare that the actions of the Defendant alleged in this Complaint were discriminatory and retaliatory and order Defendant to cease all such actions.

B. Order Defendant to make Plaintiff whole by awarding Plaintiff all lost pay and benefits, removing derogatory material from Plaintiff's personnel records and publishing in the workplace a notice of the unlawful motivations for the actions taken against Plaintiff, and by reinstating Plaintiff.

C. Enter judgment for Plaintiff in the amount of the compensatory damages awarded by the jury for all lost pay, benefits, and mental anguish and suffering.

D. Enter judgment for Plaintiff in the amount of the punitive damages awarded to Plaintiff by the jury.

E. Award Plaintiff attorney fees and the costs and expenses of this action and related administrative proceedings.

F. Grant such other relief as the court deems just.

Dated: Mineola, New York
May 25, 2023

**THE CONNOLLY LAW FIRM, P.C.**

By: __Robert Connolly /s/_______________
Robert Connolly (RC 3986)
170 Old Country Road, Suite 200
Mineola, New York 11501

Attorneys for Plaintiff
T: 516-746-5599
rconnolly@beereadylaw.com